## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **RYAN ORDONYE,**<br>    **Plaintiff** | **CIVIL ACTION** |
| **VERSUS** | **NO.  24-2084** |
| **KEVIN CLEMENT, ET AL.,**<br>    **Defendants** | **SECTION: "E" (4)** |

## <u>ORDER AND REASONS</u>

Before the Court is a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss filed by Defendants, Mayor Kevin Clement, in his individual capacity ("Mayor Clement"), and the City of Thibodaux ("the City") (sometimes collectively referred to as "the Defendants."). Defendants filed a motion to dismiss Plaintiff's (1) 42 U.S.C. § 1983 claim for violations of the Fourth and Fourteenth Amendments against Mayor Clement in his individual capacity, (2) Americans with Disabilities Act ("ADA") claim against both Mayor Clement in his individual capacity and the City, and (3) state law defamation claim against the City.[1] Plaintiff, Ryan Ordonye, opposes the motion.[2] Defendants filed a reply.[3]

## <u>BACKGROUND</u>

### I.    Factual Background

On August 24, 2024, Plaintiff, a former police officer in Thibodaux, Louisiana, filed this civil rights action against the Defendants.[4] In his second amended complaint,[5] filed on May 7, 2025, Plaintiff alleges that Defendants "undertook a campaign of defamation and violation of privacy rights against the Plaintiff in effort to undermine while violating

---

[1] R. Doc. 27; FED. R. CIV. P. 12(b)(6).
[2] R. Doc. 33.
[3] R. Doc. 36.
[4] R. Doc. 1.
[5] R. Doc. 26.

various administrative policies and constitutional laws."[6] Plaintiff asserts causes of action under 42 U.S.C. § 1983;[7] the Americans with Disabilities Act ("ADA") at 42 U.S.C. § 12112(d);[8] and Louisiana state law claims for defamation and invasion of privacy.[9] Plaintiff seeks to recover from the City for the alleged state law torts under theories of *respondeat superior* and vicarious liability.[10]

Plaintiff alleges he began working for the Thibodaux Police Department in August 2020 as a "Supervisor of Trustees, Police Guard."[11] Plaintiff alleges that, "[a]t all times relevant hereto, the Plaintiff was a full-time commissioned-police officer," and the position was "qualified as a Civil Service position under the Civil Service system, meaning that the Plaintiff could be terminated from his position only for good cause."[12]

Plaintiff alleges that, on August 28, 2023, while "experiencing a mental health crisis," he was working a security position at the Thibodaux City Courthouse.[13] Plaintiff alleges "an unfortunate incident arose" where he was "allegedly seen on security video footage taking about $200 . . . from a lost-and-found purse" at the courthouse.[14] Shortly after the incident, Plaintiff alleges he told another Thibodaux police officer about his mental health challenges.[15] Plaintiff alleges he was placed under an Order of Protective Custody on August 30, 2023 and transported to Thibodaux Regional Medical Center, where it was determined he required more intensive mental health treatment.[16] Plaintiff

---

[6] *Id.* at ¶ 1, p. 1.
[7] 42 U.S.C. § 1983.
[8] 42 U.S.C. § 12112.
[9] *See generally* R. Doc. 26. Plaintiff seeks to recover damages for emotional distress under his state law claims.
[10] R. Doc. 26, at ¶¶ 97-100, pp. 15-16.
[11] *Id.* at ¶ 20, p. 5.
[12] *Id.* at ¶ 19, p. 5.
[13] *Id.* at ¶¶ 21-22, p. 6.
[14] *Id.* at ¶¶ 22-23, p. 6.
[15] *Id.* at ¶ 24, p. 6.
[16] *Id.* at ¶¶ 25-26, p. 6.

alleges he was transported to Universal Behavioral Health Hospital that same evening.[17] Plaintiff alleges he remained at the behavioral health hospital for fifteen days prior to his release on September 14, 2023.[18] Plaintiff alleges that, while at the hospital, few people knew of his whereabouts or actively communicated with him.[19]

Plaintiff alleges that, at some point during his stay at the hospital,  he was "charged with theft after taking money from the purse in the lost-and-found."[20] As a result, Plaintiff alleges he was placed on administrative leave by the Thibodaux Police Department.[21] Plaintiff alleges that his placement on administrative leave triggered his procedural due process rights, including his "right to notice and an opportunity to be heard" prior to any final employment decision being reached.[22]

Additionally, Plaintiff alleges that, on October 16, 2023, the Houma Courier-Daily Comet published an article titled "Thibodaux Police officer charged with theft in incident caught on security camera."[23] Plaintiff alleges that Mayor Clement, "[d]espite being subject to the Louisiana Police [Officer] Bill of Rights with an ongoing investigation . . . disclosed extremely private information regarding [Plaintiff's] mental health, which he was not priv[y] to or had permission to release to the public."[24] Plaintiff alleges that, referring to whether Plaintiff would ever work for the Thibodaux Police Department again, Mayor Clement stated:

> "He can't, I mean he can't," Clement said. "It's our policy to act on that stuff, and any time that happens to anyone, if they commit a crime, there's automatic termination. Our hands are kind of tied right now, because we

---

[17] *Id.* at ¶ 26, p. 6.
[18] *Id.* at ¶ 34, p. 7.
[19] *Id.* at ¶ 33, p. 7.
[20] *Id.* at ¶ 27, p. 6.
[21] *Id.* at ¶ 28, p. 6.
[22] *Id.* at ¶ 32, p. 7.
[23] *Id.* at ¶ 35, p. 7. Plaintiff attached a copy of the article to his second amended complaint. *Id.* at Exhibit A, p. 22.
[24] *Id.* at ¶ 36, p. 8.

acted on some mental-health issues that he was having to protect his rights and make sure things were done in a proper fashion. We have to wait until those 20 days are up, and we have to wait until he is cleared by the physician. But no, he won't be coming back to work for our police department."[25]

Plaintiff alleges that, on January 10, 2024, the Thibodaux Civil Service Director sent a letter to him notifying him that a *Loudermill*[26] hearing had been scheduled.[27] The letter, attached to Plaintiff's second amended complaint,[28] included a statement that the hearing would be held on January 17, 2024, and that Plaintiff would "have the opportunity to make a reply in writing or orally at this informal hearing . . . . fail[ure] to appear for the set hearing . . . [suggests] you are waiving your right to this informal hearing and do not wish to rebut any of the reasons listed for this action."[29] Plaintiff alleges that, on or about January 17, 2024, he was forced to resign from the Thibodaux Police Department.[30]

Plaintiff alleges that, "[w]hen Defendant Clement disclosed Mr. Ordonye's mental health [status], he created a working condition that was intolerable for him, giving him no choice but to resign."[31] Plaintiff alleges he lost job opportunities at the Thibodaux Police Department as a result of the incident.[32] Plaintiff also alleges he was never convicted of misdemeanor theft.[33]

"Because this case arises from a motion to dismiss, we accept as true the factual

---

[25] *Id.* at ¶ 37, p. 8.
[26] *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985). *Loudermill* hearings represent "[t]he essential requirements of due process" in allowing civil service employees "notice and an opportunity to respond" prior to termination. *Id.* at 546.
[27] R. Doc. 26, at Exhibit B, p. 23.
[28] *Id.*
[29] *Id.*
[30] *Id.* at ¶ 112, p. 18.
[31] *Id.* at ¶ 54, p. 10.
[32] *Id.* at ¶ 43, p. 8.
[33] *Id.* at ¶ 42, p. 8.

allegations in [Plaintiff's] complaint,"[34] but do not accept as true legal conclusions or mere conclusory statements.[35]

## II.    Procedural History

Defendants filed their first motion to dismiss on November 4, 2024.[36] In response to the motion to dismiss, Plaintiff requested leave to amend his complaint.[37] The Court granted Plaintiff leave to file a first amended complaint to "address[], fully and completely, all arguments raised in the Defendants' motion to dismiss."[38] After Plaintiff timely filed his first amended complaint,[39] the Court denied Defendants' first motion to dismiss without prejudice.[40]

Defendants filed a second motion to dismiss on December 30, 2024.[41] Defendants sought dismissal of Plaintiff's (1) 42 U.S.C. § 1983 claims for violation of the Fourth and Fourteenth Amendments against Mayor Clement in both his individual and official capacities, (2) *Monell v. Department of Social Services*[42] claim against the City of Thibodaux, and (3) ADA claim against both Mayor Clement and the City.[43] Defendants also requested that, "in the event this [m]otion is granted, . . . . Defendants respectfully request the Court deny exercising supplemental jurisdiction over the state law claims and remand the case to state court."[44] The Court granted Defendants' second motion to

---

[34] *Santander v. Salazar*, 133 F.4th 471, 476 (5th Cir. 2025) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 734 (2011)).
[35] *S. Christian Leadership Conf. v. Sup. Ct. of the State of La.*, 252 F.3d 781, 786 (5th Cir. 2001) (citing *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993)).
[36] R. Doc. 6.
[37] R. Doc. 7, at p. 11.
[38] R. Doc. 9, at p. 3.
[39] R. Doc. 10.
[40] R. Doc. 11.
[41] R. Doc. 13.
[42] 436 U.S. 658 (1978).
[43] *See* R. Doc. 13.
[44] R. Doc. 13-1, at p. 16.

dismiss in part and denied it in part.[45] The Court dismissed with prejudice Plaintiff's *Monell* claims against the City of Thibodaux and Plaintiff's official capacity claims against Mayor Clement prejudice and dismissed without prejudice Plaintiff's ADA claim for failure to exhaust administrative remedies.[46] The Court denied Defendants' second motion to dismiss regarding Plaintiff's 42 U.S.C. § 1983 claim against Mayor Clement in his individual capacity, and continued to exercise supplemental jurisdiction over Plaintiff's state law claims.[47]

Defendants filed an answer and affirmative defenses to Plaintiff's first amended complaint on February 18, 2025,[48] specifically raising the affirmative defense of qualified immunity.[49]

Plaintiff then filed a second amended complaint on May 7, 2025.[50] This complaint omitted Plaintiff's *Monell* claims and official capacity claims against Mayor Clement, which had been dismissed by the Court with prejudice,[51] and again alleged his ADA claim against Mayor Clement and the City.[52]

Defendants filed a third motion to dismiss on May 19, 2025.[53] Defendants seek dismissal of Plaintiff's (1) 42 U.S.C. § 1983 constitutional claims for violations of the Fourth and Fourteenth Amendments against Mayor Clement in his individual capacity, (2) ADA claim against both Mayor Clement in his individual capacity and the City, and

---

[45] R. Doc. 17.
[46] *Id.*
[47] *Id.*
[48] R. Doc. 19.
[49] R. Doc. 19, at ¶ 133, p. 37.
[50] R. Doc. 26. Plaintiff requested leave of Court to file a second amended complaint, representing that he had received a right-to-sue letter from the EEOC and wished to again allege his ADA claim. R. Doc. 24. The Court granted Plaintiff's motion. R. Doc. 25.
[51] R. Doc. 17.
[52] R. Doc. 26, at ¶¶ 101-118, pp. 16-19.
[53] R. Doc. 27.

(3) state law defamation claim against the City.[54] Defendants also request that, if the motion to dismiss is granted, the Court decline to exercise supplemental jurisdiction over the remaining state law claims.[55]

## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court may dismiss a complaint for failure to state a claim upon which relief may be granted if the plaintiff has not set forth factual allegations in support of his claim that would entitle him to relief.[56] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[57] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[58] The Court, however, does not accept as true legal conclusions or mere conclusory statements, and "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."[59] Indeed, "threadbare recitals of elements of a cause of action, supported by mere conclusory statements" or "naked assertion[s] devoid of further factual enhancement" are not sufficient.[60]

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"[61] However, "legal conclusions can provide the framework

---

[54] *Id.* at p. 1.
[55] *Id.* at pp. 1-2.
[56] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007).
[57] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).
[58] *Id.*
[59] *S. Christian Leadership Conf. v. Sup. Ct. of the State of La.*, 252 F.3d 781, 786 (5th Cir. 2001) (citing *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993)).
[60] *Iqbal*, 556 U.S. at 663, 678 (citations omitted).
[61] *Id.* at 679 (quoting FED. R. CIV. P. 8(a)(2)).

of a complaint, [if] they [are] supported by factual allegations."[62] "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[63] "Although detailed factual allegations are not required," "[d]ismissal is appropriate when the complaint 'on its face show[s] a bar to relief.'"[64] Whether a plaintiff "will be able to offer sufficient proof to support [his or her] claims is more appropriate in the context of a motion for summary judgment or a trial on the merits" rather than in a motion to dismiss.[65] "[I]ntensive disputes of material fact . . . are usually more appropriate for summary judgment . . . ."[66]

## LAW AND ANALYSIS

### III.    Plaintiff's § 1983 Fourth and Fourteenth Amendment claims are based on violations of privacy and due process rights.

Title 42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .[67]

"Section 1983 confers no substantive rights, but merely provides a remedy for the violation [by a person acting under color of state law,] of rights secured under the Constitution and laws of the United States."[68] "To prevail on a Section 1983 claim, a

---

[62] *Id.* "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

[63] *Iqbal*, 556 U.S. at 679.

[64] *Cutrer v. McMillan*, 308 Fed.Appx. 819, 820 (5th Cir. 2009) (per curiam) (citations omitted).

[65] *Smith v. GE Healthcare, Inc.*, No. 3:19-CV-00492, 2019 WL 4565246, at *7 (W.D. La. Sept. 4, 2019).

[66] *Dong Phuong Bakery, Inc. v. Gemini Soc'y, LLC*, No. CV 21-1109, 2022 WL 898750, at *5 (E.D. La. Mar. 28, 2022).

[67] 42 U.S.C. § 1983.

[68] *Broussard v. Lafayette City-Par. Consol. Gov't*, 45 F.Supp.3d 553 (W.D. La. 2014) (quoting *Southwestern Bell Telephone, LP v. City of Houston*, 529 F.3d 257, 260 (5th Cir. 2008)).

plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States."[69]

In his second amended complaint, Plaintiff asserts claims against Mayor Clement in his individual capacity for violations of his privacy and due process rights under the Fourth and Fourteenth Amendments.[70] Plaintiff alleges that Mayor Clement, acting under color of law, violated Plaintiff's right to substantive and procedural due process as guaranteed by the Fourteenth Amendment . . . ."[71]

In its previous Order and Reasons on February 3, 2025, the Court found that, in the first amended complaint, Plaintiff had sufficiently alleged a § 1983 claim against Mayor Clement in his individual capacity.[72] Because the Court now has additional information before it, and Mayor Clement has raised the defense of qualified immunity, the Court will re-examine its prior opinion to the extent necessary.[73]

The Defendants filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) asserting that Mayor Clement in his individual capacity is entitled to qualified immunity.[74]

"Qualified immunity is a defense available to government officials in their individual capacities under 42 U.S.C. § 1983."[75] "Qualified immunity is an 'immunity from suit rather than a mere defense to liability.'"[76] "Qualified immunity protects 'government

---

[69] *Barker on Behalf of Barker v. City of Plaquemine*, No. CV 17-340-SDD-RLB, 2019 WL 4580047, at *3 (M.D. La. Sept. 20, 2019) (citing *Blessing v. Freestone*, 520 U.S. 329, 340 (1997)); *Daniels v. Williams*, 474 U.S. 327, 330 (1986)).
[70] R. Doc. 26, at ¶¶ 48-61, pp. 9-11. Plaintiff titles "Count One" of his second amended complaint "42 U.S.C. § 1983—Violation of the 4th and 14th Amendments of the United States Constitution." *Id.* at p. 9.
[71] *Id.* at ¶ 56, p. 10
[72] R. Doc. 17, p. 18.
[73] *Agostini v. Felton*, 521 U.S. 203, 236 (1997) (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)).
[74] R. Doc. 27.
[75] *Livingston v. Ward*, 4:20-CV-00474-SDJ-CAN, 2021 WL 3480007, at *5 (E.D. Tex. June 4, 2021).
[76] *Id.* (quoting *Pearson v. Callahan*, 555 U.S. 223, 237 (2009)).

officials performing discretionary functions' from liability for civil damages so long as their 'conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"[77]

Once a defendant invokes the defense of qualified immunity in a motion to dismiss, "[i]t is the plaintiff's burden to demonstrate that qualified immunity is inappropriate."[78] The Plaintiff argues that "just recently, the United States Fifth Circuit has held that, on a motion to dismiss for failure to state a claim in a § 1983 action on ground that defendant is entitled to qualified immunity, it is inappropriate to state that [it is] the Plaintiff's burden to demonstrate that qualified immunity" does not apply,[79] citing *Benfer v. City of Baytown, Texas,*[80] but *Baytown* clearly says it is the plaintiff's burden, citing the Terwiliger case, and the Court rejects this argument.[81]

It is true, however, that "an assertion of qualified immunity...does not subject the complaint to a heightened pleading standard."[82] Thus, "[an] immunity-from-suit interest does not require that the plaintiff's original complaint exceed the ... standard of Rule 8" of the Federal Rules of Civil Procedure.[83] As for the substance of the Plaintiff's claims, "the court determines whether the plaintiff has alleged a plausible constitutional violation before turning to the qualified immunity analysis."[84] Plaintiff is required to "plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal

---

[77] *Id.* (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).
[78] *Guerra v. Castillo*, 82 F.4th 278, 285 (5th Cir. 2023) (quoting *Terwilliger v. Reyna*, 4 F.4th 270, 280 (5th Cir. 2021)).
[79] R. Doc. 33, pp. 10-11.
[80] *Benfer v. City of Baytown, Texas*, 120 F.4th 1272 (5th Cir. 2024).
[81] *Id.* at 1279 (citing *Terwilliger v. Reyna*, 4 F.4th 270, 280 (5th Cir. 2021)).
[82] *Arnold v. Williams*, 979 F.3d 262, 267 (5th Cir. 2020).
[83] *Id.*
[84] *Santander v. Salazar*, 133 F.4th 471, 478 (5th Cir. 2025) (quoting *Guerra v. Castillo*, 82 F.4th 278, 285 (5th Cir. 2020)).

specificity."[85] Mere "conclusory allegations will not suffice to prevent dismissal for failure to state a claim."[86]

As an initial matter, it is undisputed that Mayor Clement was acting under color of state law. The Court must determine whether the Plaintiff alleged plausible Fourth and Fourteenth Amendment constitutional violations under § 1983. Only then is it necessary for the Court to undertake a qualified immunity analysis.[87]

## IV.    The Plaintiff has not alleged a plausible Fourteenth Amendment procedural due process violation for constructive discharge.

In Count 1 of the second amended complaint, Plaintiff asserts a Fourteenth Amendment procedural due process claim under 42 U.S.C. § 1983 for constructive discharge alleging that he "was forced to resign" on January 17, 2024.[88] Plaintiff alleges that, "[o]n October 16, 2023, the Houma Courier-Daily Comet published an article titled 'Thibodaux Police officer charged with theft in incident caught on security camera.'"[89] Plaintiff alleges that Mayor Clement, "[d]espite [Plaintiff] being subject to the Louisiana Police [Officer] Bill of Rights with an ongoing investigation . . . disclosed extremely private information regarding [Plaintiff's] mental health, which he was not priv[y] to or had permission to release to the public."[90] Plaintiff alleges that, referring to whether Plaintiff would ever work for the Thibodaux Police Department again, Mayor Clement stated:

> "He can't, I mean he can't," Clement said. "It's our policy to act on that stuff, and any time that happens to anyone, if they commit a crime, there's automatic termination. Our hands are kind of tied right now, because we acted on some mental-health issues that he was having to protect his rights and make sure things were done in a proper fashion. We have to wait until

---

[85] *Id.*
[86] *Penley v. Sandoval*, No. Civ.A. 4:04CV24, 2005 WL 3970822, at *6 (E.D. Tex. Mar. 8, 2005).
[87] *Santander*, 133 F.4th at 479.
[88] R. Doc. 26, at ¶ 112, p. 18.
[89] *Id.* at ¶ 35, p. 7. Plaintiff attached a copy of the article to his second amended complaint. *Id.* at Exhibit A, p. 22.
[90] *Id.* at ¶ 36, p. 8.

those 20 days are up, and we have to wait until he is cleared by the physician. But no, he won't be coming back to work for our police department."[91]

Plaintiff alleges that on January 10, 2024, the Thibodaux Civil Service Director sent a letter to Plaintiff notifying him that a *Loudermill*[92] hearing had been scheduled.[93] The letter, attached to Plaintiff's second amended complaint,[94] included a statement that the hearing would be held on January 17, 2024, and that Plaintiff would "have the opportunity to make a reply in writing or orally at this informal hearing . . . fail[ure] to appear for the set hearing . . . [suggests] you are waiving your right to this informal hearing and do not wish to rebut any of the reasons listed for this action."[95] Plaintiff alleges that Mayor Clement already had decided to terminate him prior to the hearing. Plaintiff alleges that on or about January 17, 2024 he was forced to resign from the Thibodaux Police Department.[96] Plaintiff alleges that, "[w]hen Defendant Clement disclosed Mr. Ordonye's mental health [status], he created a working condition that was intolerable for him, giving him no choice but to resign."[97]

At the Rule 12(b)(6) stage, the Court must assess whether the allegations of Plaintiff's complaint, taken as true, are sufficient to allege a plausible constitutional violation before turning to the qualified immunity analysis.[98] "[A] plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that

---

[91] *Id.* at ¶ 37, p. 8.
[92] *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985).
[93] R. Doc. 26, at Exhibit B, p. 23.
[94] *Id.*
[95] *Id.*
[96] *Id.* at ¶ 112, p. 18.
[97] *Id.* at ¶ 54, p. 10.
[98] *Santander*, 133 F.4th at 479.

defeat qualified immunity defense with equal specificity."[99] Thus, the Court must first determine whether the facts alleged, taken in the light most favorable to the plaintiff, make out a constitutional violation.[100]

The Plaintiff claims he was deprived of his procedural due process rights under the Fourteenth Amendment because he was constructively discharged. Plaintiff alleges he was deprived of his due process right to a meaningful opportunity to be heard when Mayor Clement "engaged in a pattern disclosure in order to retaliate against the Plaintiff and to create an intolerable work environment . . . to have him quit his employment."[101] Plaintiff also alleges he was deprived of a meaningful opportunity to be heard when Defendant Clement "disclosed a pre-determined outcome of termination... despite the fact no *Loudermill* hearing had been conducted."[102]

To state a procedural due process claim under the Fourteenth Amendment for constructive discharge, Plaintiff must allege the following elements: (1) that his working conditions were so intolerable that a reasonable person would feel forced to resign,[103] and (2) that his employer acted to avoid affording pretermination hearing procedures.[104]

---

[99] *Arnold*, 979 F.3d at 267 (quoting *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012).

[100] *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

[101] R. Doc. 26, at ¶ 56, p. 10 (sic).

[102] *Id*. at ¶ 39, p. 8.

[103] *Lightell v. Walker*, 527 F.Supp.3d 866, 888 (E.D. La. 2021).

[104] *Fowler v. Carrollton Public Library*, 799 F.2d 976, 981 (5th Cir. 1986). In *Fowler*, the Fifth Circuit required two elements for a constructive discharge claim: (1) that the employee was forced to choose between resignation and termination, and (2) that the employer was motivated by a desire to avoid pre-termination procedures. 799 F.2d at 981. However, in *Brown v. Texas A&M University*, the court stated that either showing is sufficient. Specifically, this panel of the Fifth Circuit held that a plaintiff may establish a constructive discharge claim by alleging particular facts showing *either* (a) that the employee was forced into a resignation to avoid certain termination, or (b) that the employer acted with the intent to evade procedural protections. 804 F.2d at 333. Some subsequent decisions, such as *Holden v. Knight*, appear to adopt this interpretation by recognizing constructive discharge claims based solely on the involuntariness of the resignation, without requiring proof of the employer's motive to bypass process. 155 Fed.Appx. 735, 739 (5th Cir. 2005). In contrast, *Rutland v. Pepper* applied only the motive-to-evade-process prong and did not consider whether the employee had no real choice but to resign. 404 F.3d 921, 922-23 (5th Cir. 2005). Because *Fowler* was decided first, the Fifth Circuit's rule of orderliness dictates that *Fowler* governs if there is a conflict. *Billiot v. Puckett*, 135 F.3d 311, 316 (5th Cir. 1998) (explaining that where two previous holdings

---

For working conditions to be so intolerable that a "reasonable employee would feel compelled to resign,"[105] the plaintiff must be placed 'between the Scylla of voluntary resignation and the Charybdis of forced termination.'"[106] Even if this is shown, a "[c]onstructive discharge in a procedural due process case constitutes a § 1983 claim only if it amounts to forced discharge to avoid affording pretermination hearing procedures."[107]

Taking Plaintiff's allegations as true and viewing them in the light most favorable to Plaintiff, the Court finds Plaintiff has not plausibly alleged a constructive discharge occurred.[108] A reasonable employee might perceive that Mayor Clement created an intolerable working environment when he publicly disclosed that Plaintiff would be terminated in advance of a hearing. Faced with a foregone conclusion, Plaintiff might reasonably have believed that resignation was his only option. This scenario falls squarely within the situation of forcing reasonable employees to choose "between the Scylla of voluntary resignation and the Charybdis of forced termination."[109] However, nowhere in Plaintiff's complaint does he allege that Mayor Clement's motivation amounted to a "forced discharge to avoid affording pretermination hearing procedures."[110] Because both elements must be plausibly alleged, Plaintiff has not sufficiently pleaded that he was denied procedural due process under the Fourteenth Amendment and the claim must be dismissed.

---

conflict, the earlier opinion controls and is binding precedent)). Accordingly, Plaintiff must allege facts which plausibly infer that (1) the employee was forced to choose between resignation and termination, *and* (2) that the employer was motivated by a desire to avoid pretermination procedures.

[105] *Lightell*, 527 F.Supp.3d at 888 (quoting *Finch v. Fort Bend Indep. Sch. Dist.*, 333 F.3d 555, 562 (5th Cir. 2003)).

[106] *Id.* (quoting *Fowler v. Carrollton Publ. Library*, 799 F.2d 976, 981 (5th Cir. 1986)).

[107] *Fowler*, 799 F.2d at 981.

[108] R. Doc. 26, at ¶ 48-61, pp. 9-11.

[109] *Fowler*, 799 F.2d at 981.

[110] *Id.*

## V.    Plaintiff has not alleged a plausible Fourteenth Amendment privacy right.

As explained above, the Court must determine whether the Plaintiff has plausibly alleged a Fourteenth Amendment privacy violation before considering whether Mayor Clement has qualified immunity. Plaintiff alleges that Mayor Clement "violated Plaintiff's privacy…rights by obtaining [Plaintiff's] private mental health information under knowingly false pretenses, and further, by providing that information to Houma Courier-Daily Comet."[111] Plaintiff alleges that, referring to Plaintiff's mental health information, Mayor Clement was quoted, in part, by the Houma Courier-Daily Comet as follows:

> "Our hands are kind of tied right now, because we acted on some mental-health issues that he was having to protect his rights and make sure things were done in a proper fashion. We have to wait until those 20 days are up, and we have to wait until he is cleared by the physician. But no, he won't be coming back to work for our police department."[112]

Plaintiff alleges he was "mortified that such personal information…was disclosed to third parties regarding his mental health."[113]

The Fourteenth Amendment protects the "individual interest in avoiding disclosure of personal matters," also known as the "confidentiality branch" of substantive due process privacy rights.[114] The confidentiality branch, "includes the right to be free from the government disclosing private facts about its citizens and from the government inquiring into matters in which it does not have a legitimate and proper concern."[115]

To state a viable Fourteenth Amendment privacy claim, Plaintiff must allege facts establishing (1) the existence of a constitutionally protected privacy interest, and (2) that

---

[111] R. Doc. 26, at ¶ 59, p. 9.
[112] *Id.* at ¶ 37, p. 8.
[113] *Id.* at ¶ 38, p. 8.
[114] *Whalen v. Roe*, 429 U.S. 589, 599 (1977),
[115] *Ramie v. City of Hedwig Village, Texas*, 765 F.2d 490, 492 (5th Cir. 1985).

his interest outweighs the government's legitimate state interest. For the reasons discussed below, the Court finds Plaintiff has not sufficiently alleged the existence of a constitutional right to privacy in keeping the information that was disclosed confidential from public disclosure.

In *Zaffuto v. City of Hammond*, the Fifth Circuit Court of Appeals considered the constitutional right to privacy and declined to extend it to a police officer's claim based on the public disclosure that he did not like some of his bosses.[116] The Fifth Circuit explained that while it "has never explicitly determined what type of disclosures are 'personal' enough to create a constitutional cause of action, other courts have clearly been limiting the scope of confidentiality branch actions."[117] The Fifth Circuit cited *Davis III v. Bucher* with approval, a case in which the Ninth Circuit held that a corrections officer's disclosure of nude photos of an inmate's wife did not rise to a constitutional violation, as the case presented "two isolated instances of poor judgment" and elevating this to a "constitutional dimension would trivialize the Fourteenth Amendment by making it a magnet for all claims involving personal information, state officers, and unfortunate indignities."[118] Accordingly, "[t]he constitutional right to privacy is generally limited to only the most intimate aspects of human affairs."[119]

Further, in *Collins v. City of Harker Heights, Texas*, the United States Supreme Court emphasized that it has "rejected claims that the Due Process Clause should be interpreted to impose federal duties that are analogous to those traditionally imposed by state tort law."[120] The Supreme Court further noted that this reasoning "applies with

---

[116] *Zaffuto v. City of Hammond*, 308 F.3d 485, 490-91 (5th Cir. 2002).
[117] *Id*. at 490.
[118] *Id*. at 490-91 (quoting *Davis III v. Bucher*, 853 F.2d 718, 720-21 (9th Cir. 1988)).
[119] *Id*. at 490 (quoting *Wade v. Goodwin*, 843 F.2d 1150, 1153 (8th Cir. 1988)).
[120] *Collins v. City of Harker Heights, Texas*, 503 U.S. 115, 128 (1992).

special force to claims asserted against public employers because state law, rather than the Federal Constitution, generally governs the substance of the employment relationship."[121]

The Court notes that Plaintiff has, in fact, made a claim against Mayor Clement under Louisiana state law. In Count Two ("State Law Defamation"),[122] Plaintiff asserts a state law defamation claim, alleging that Mayor Clement's disclosure "regarding his mental health and job status" was "defamatory per se" under Louisiana tort law.[123] As in *Zaffuto*, Plaintiff's allegations concern an isolated, employment-related disclosure by a public official that, while potentially defamatory under state law, does not rise to the level of a constitutional violation.[124] The Fifth Circuit has made clear that not all disclosures of personal or sensitive information by public employers implicate a constitutional right, particularly when the information does not concern an intimate matter or where the disclosure is isolated and employment-related.[125] While Plaintiff's mental health information is undoubtedly sensitive, its disclosure in this context was an isolated occurrence and employment related. The disclosure does not implicate the kind of privacy interest protected by substantive due process.

Moreover, as *Collins* emphasized, claims concerning the conduct of public employers are generally governed by state law, not the Constitution.[126] Framing the claim as a Fourteenth Amendment violation does not overcome the Supreme Court's settled precedent that such claims, where they sound in defamation or other state tort law, are

---

[121] *Id.*
[122] R. Doc. 26, at p. 11.
[123] *Id.* at ¶ 68, p. 12.
[124] *Zaffuto*, at 490-91 (5th Cir. 2002) (quoting *Davis III v. Bucher*, 853 F.2d 718, 720-21 (9th Cir. 1988)).
[125] *Id.*
[126] *Collins*, 503 U.S. at 128.

generally more properly addressed through state tort remedies.[127]

Accordingly, the Court finds that Plaintiff has not alleged facts sufficient to establish the existence of a constitutionally protected Fourteenth Amendment privacy interest. Because no such privacy interest is implicated, Plaintiff's claim fails at the outset and must be dismissed.[128]

## VI.    Plaintiff has not alleged a plausible Fourth Amendment privacy violation.

The Court must determine whether Plaintiff has alleged a plausible Fourth Amendment violation of his right to privacy before turning to a qualified immunity analysis.  The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."[129] As the Supreme Court has recognized, the amendment's purpose is to safeguard an individual's privacy against arbitrary invasions by the government.[130] Although this case does not involve any criminal conduct, "[i]t is well settled that the Fourth Amendment's protection extends beyond the sphere of criminal investigations,"[131] and "applies . . . when the Government acts in its capacity as an employer."[132]

---

[127] *Id.*

[128] Even assuming Plaintiff had plausibly alleged a violation of his Fourteenth Amendment right to privacy, his claim still fails because the right was not clearly established at the time of the alleged disclosure. In *Zaffuto*, the Fifth Circuit stated that "the contours of the confidentiality branch are murky." 308 F.3d 485, 490. In his reply, Plaintiff concedes the case noted that "there is no Fifth Circuit authority on what type of disclosures are personal enough to trigger the protection of the confidentiality branch." *Id.* Accordingly, Plaintiff has not sufficiently alleged that the Fourteenth Amendment right to privacy was clearly established.

[129] U.S. CONST. amend. IV.

[130] *Carpenter v. United States*, 585 U.S. 296, 303 (2018).

[131] *City of Ontario, Cal. V. Quon*, 560 U.S. 746, 755 (2010).

[132] *Id.* (citing *National Treasury Employees Union v. Von Raab*, 489 U.S. 656, 665 (2010)).

To state a viable Fourth Amendment claim, Plaintiff must allege facts establishing (1) a search or seizure within the meaning of the Fourth Amendment occurred, and (2) that the search or seizure was unreasonable. The Supreme Court has recognized two tests for determining whether a search has occurred under the Fourth Amendment. Under *Katz v. United States*,[133] "[a] 'search' occurs when an expectation of privacy that society is prepared to consider reasonable is infringed."[134] For an infringement to occur, "a 'reasonable,' or a 'legitimate expectation of privacy'" must be "invaded by government action."[135]

*Katz*'s "reasonable expectation of privacy" test has two elements; there must be (1) an "actual (subjective) expectation of privacy" that (2) "society is prepared to recognize as 'reasonable.'"[136]  As *Katz* explains, "[w]hat a person knowingly exposes to the public even in his own home or office, is not a subject of Fourth Amendment protection. But what [a person] seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected."[137] Further, "a *Katz* invasion of privacy, is not alone a search unless it is done to obtain information; and the obtaining of information is not alone a search unless it is achieved" by such an invasion of privacy.[138]

Second is the "trespassory" or property-based test articulated in *United States v. Jones*.[139] In *Jones*, the Supreme Court held that a search occurs where there is (1) a trespass or physical intrusion upon a protected area (persons, houses, papers, or effects)

---

[133] 389 U.S. 347 (1967).
[134] *United States v. Jacobsen*, 466 U.S. 109, 113 (1984) (citing *Illinois v. Andreas*, 463 U.S. 765, 771 (1983)).
[135] *Smith v. Maryland*, 442 U.S. 735, 740 (1979).
[136] *Katz*, 389 U.S. at 361.
[137] *Id.* at 351.
[138] *Smith*, 442 U.S. at 740.
[139] *United States v. Jones*, 565 U.S. 400 (2012).

that is (2) conjoined with "an attempt to find something or obtain information."[140] The *Jones* and *Katz* tests coexist, and government conduct constitutes a Fourth Amendment search if it satisfies either standard—that is, if it infringes on a reasonable expectation of privacy or involves a physical intrusion into a protected area for the purpose of gathering information.[141]

Plaintiff's allegations do not implicate the *Jones* test. The only conduct alleged is that Mayor Clement obtained the information "under knowingly false pretenses"[142] and that Plaintiff had "confided with another officer at the Thibodaux Police Department about his mental health issues."[143] Plaintiff acknowledges the information was obtained through the Plaintiff's own conversation with a police officer—not through any physical intrusion into a constitutionally protected space. Accordingly, the Court will turn to whether Plaintiff alleged a sufficient claim under *Katz*.

There is no allegation that a search occurred. The only allegations that could possibly support Plaintiff's Fourth Amendment privacy claim under *Katz* are: (1) the allegation in Count One that "Defendant Clement further violated Plaintiff's privacy and due process rights by obtaining private mental health information under knowingly false pretenses, and further, by providing that information to Houma Courier-Daily Comet;"[144] and (2) an allegation that Plaintiff "confided with another officer at the Thibodaux Police Department about his mental health issues [he was] experiencing at the time of the events."[145]

---

[140] *Jones*, 565 U.S. at 408 n.5.
[141] *United States v. Ackerman* 831 F.3d 1292, 1307 (10th Cir. 2016).
[142] R. Doc. 26, at ¶ 59, p. 10.
[143] *Id.* at ¶ 24, p. 6.
[144] *Id.* at ¶ 59, p. 10.
[145] *Id.* at ¶ 24, p. 6. Under Count Three "State Law Invasion of Privacy," Plaintiff alleges in support of his state law claim that "he had a reasonable expectation of privacy in and to the information concerning the

Plaintiff's allegations fall short of showing there was a search under *Katz*. Plaintiff's voluntary disclosure of his mental health information to a police officer undermines any claim he had a subjective expectation of privacy in information that was obtained by an unreasonable search. As *Katz* makes clear, "[w]hat a person knowingly exposes to the public even in his own home or office, is not subject to Fourth Amendment protection."[146] Once Plaintiff shared this information with a third party, any reasonable expectation of privacy in that information was diminished, if not extinguished.

Accordingly, the Court finds that Plaintiff has not alleged facts sufficient to establish that a search occurred. Without a search, there can be no unreasonable seizure. Absent a constitutional violation, Plaintiff has not stated a cognizable claim under the Fourth Amendment, and the Court will grant Defendants' Motion to Dismiss this claim.

## VII.  Plaintiff failed to administratively exhaust his claim for unauthorized disclosure under section 12112(d) of the ADA.

In Count Eight of his second amended complaint, Plaintiff asserts a claim against Defendants under the ADA pursuant to 42 U.S.C. § 12112(d).[147] Section 12112(d) prohibits

---

accusations of misconduct in accordance with La. Const. Art. 1 § 5 and Louisiana jurisprudence regarding invasion of privacy." Although the Court notes this allegation and mentions it here for completeness, Plaintiff does not allege any additional facts under Count One, which alleges a Fourth Amendment violation, or elsewhere in the Second Amended Complaint, to support the reasonable expectation of privacy prong. Accordingly, the Court will not consider this allegation under Count Three in support of Plaintiff's federal constitutional claims.

[146] *Katz*, 389 U.S. at 351.

[147] R. Doc. 26, at ¶¶ 101-118, pp. 16-19. In paragraph 6 of his second amended complaint, the Plaintiff states that he "brings this action under the Americans with Disabilities Act, 42 U.S.C. § 12112(d) and 42 U.S.C. § 1983...." *Id.* at ¶ 6, p. 2. The Plaintiff cites 42 U.S.C. § 12112(a) in paragraph 102 of the second amended complaint but does not allege the elements of any cause of action under this subsection. *Id.* at ¶ 102, p. 16. In Plaintiff's letter to the Court pursuant to the scheduling order, identifying the causes of action asserted, the Plaintiff lists only a claim for improper disclosure of confidential medical information under 42 U.S.C. § 12112(d). R. Doc. 21. Plaintiff's charge letter to the EEOC quotes 42 U.S.C. § 12112(a) and (c) but does not assert a claim under those sections and, instead, mentions a claim only under § 12112(d). *See* Attachment 1. In fact, on the attached Louisiana Commission on Human Rights Intake Questionnaire, Plaintiff checks a box indicating that he is not disabled. *See* Attachment 1. Even if Plaintiff's second amended complaint and charge letter are generously construed to include a claim under § 12112(a), Plaintiff failed to allege the elements of such a claim and the motion to dismiss would be granted for this reason. Plaintiff's arguments in his opposition to the motion to dismiss cannot substitute for the lack of allegations in his complaint. R. Doc. 33, at pp. 12-14; *Roebuck v. Dothan Sec., Inc.*, 515 FedAppx. 275, 280 (5th Cir. 2013).

employers from disclosing employees' confidential medical information obtained during an entrance exam or a disability-related inquiry.[148] Plaintiff alleges that Mayor Clement and the City violated section 12112(d) by disclosing his confidential medical information to the press without authorization, resulting in a "tangible injury,"[149] including "severe emotional distress, mental anguish, embarrassment, humiliation, and physical pain and suffering.[150] Plaintiff alleges the disclosure occurred on October 16, 2023.[151]

Defendants argue Plaintiff's ADA claim must be dismissed for failure to exhaust administrative remedies, asserting Plaintiff failed to timely file a charge with the EEOC before initiating suit.[152] Plaintiff's second amended complaint referenced an EEOC charge number,[153] but the date of the charge letter was not included, and the charge letter was not attached. Defendants argue that without the charge letter "there is no way to verify the timeliness of the charge or its subject matter."[154] Plaintiff eventually provided a copy of the charge letter, which is dated August 24, 2024.[155]

The ADA incorporates by reference the procedures applicable to actions under Title VII, 42 U.S.C. § 2000e, *et seq.*[156] Title 42 U.S.C. § 12117(a) provides:

The powers, remedies, and procedures set forth in sections 2000e-4, 2000e-

---

[148] 42 U.S.C. § 12112(d).

[149] R. Doc. 26, at ¶ 113, p. 18.

[150] *Id.* at ¶¶ 101-118, pp. 16-19.

[151] *Id.* at ¶ 109, p. 17.

[152] R. Doc. 27-1, at pp. 12-14.

[153] R. Doc. 26, at ¶ 103, p. 16.

[154] R. Doc. 27-1, at p. 13.

[155] *See* Attachment 1. When considering a Rule 12(b)(6) motion, the Court may consider "(1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201." *Krystal One Acquisitions, L.L.C. v. Bank of America, N.A.*, 805 Fed.Appx. 283, 287 (5th Cir. 2020). Federal Rule of Evidence 201 provides: "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it …. can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." The Court finds that Plaintiff's EEOC charge letter is a source whose accuracy cannot reasonably be questioned. Accordingly, the Court takes judicial notice of Plaintiff's EEOC charge letter, attaches it to its Order & Reasons as "Attachment 1," and properly considered it when deciding this Rule 12(b)(6) motion to dismiss.

[156] 42 U.S.C. § 12117(a); *Wesley v. Dallas Indep. Sch. Dist.*, No. 3-08-CV-2025-K, 2009 WL 193786, at *2 (N.D. Tex. Jan. 27, 2009) (citing *Dao v. Auchan Hypermarket*, 96 F.3d 787, 788-789 (5th Cir. 1996)).

5, 2000e-6, 2000e-8, and 2000e-9 of this title shall be the powers, remedies, and procedures this subchapter provides to the Commission, to the Attorney General, or to any person alleging discrimination on the basis of disability in violation of any provision of this chapter, or regulations promulgated under section 12116 of this title, concerning employment.[157]

Accordingly, the exhaustion requirement for ADA claims is satisfied when the plaintiff files a timely charge with the EEOC and receives a statutory right-to-sue notice.[158] A charge is timely if filed with the EEOC within 300 days of the alleged ADA violations, and a suit is timely if filed within 90 days of receiving a right-to-sue letter.[159] In *Green v. Brennan*,[160] the Supreme Court further clarified that the limitations period for discrimination claims begins to run when the claim accrues.[161] This requirement is strictly construed, and courts have routinely dismissed cases in which the plaintiff did not provide proof that the administrative remedy had been exhausted prior to bringing suit.[162]

Plaintiff alleges Mayor Clement "intentionally disclosed his personal healthcare information to third-parties in a nonmedical setting, which he did not have permission to do."[163] Plaintiff's unauthorized disclosure claim accrued on the date of the alleged disclosure, October 16, 2023.[164] To be timely, Plaintiff must have filed a charge letter with the EEOC regarding his claim by August 12, 2024, which is within 300 days of the alleged disclosure.[165] Plaintiff's charge letter was dated August 24, 2024.[166] Plaintiff has offered

---

[157] 42 U.S.C. § 12117(a).
[158] 42 U.S.C. § 2000e-5(b), (e), (f); 42 U.S.C. § 12117; *E.E.O.C. v. Res. for Hum. Dev., Inc.*, 827 F. Supp. 2d 688, 697 (E.D. La. 2011).
[159] 42 U.S.C. § 2000e-5(b), (e), (f); 42 U.S.C. § 12117.
[160] 578 U.S. 547 (2016).
[161] *Id.* at 563.
[162] *Banks v. Hazlehurst City Sch.*, No. 3:15CV355-DPJ-FKB, 2016 WL 2654369 (S.D. Miss. May 4, 2016) (citations omitted) (citing *Hall v. Ouachita Parish Corr. Center*, No. 07-2187, 2008 WL 724230, at *2 (W.D. La. Mar. 17, 2008) (dismissing claim for failure to exhaust administrative remedies where plaintiff did not provide evidence that he exhausted his administrative remedies prior to filing a claim)).
[163] R. Doc. 26, at ¶ 40, p. 8.
[164] *Id.* at ¶¶ 108-109, p. 17; *Green*, 578 U.S. at 563.
[165] 42 U.S.C. § 2000e-5(b), (e), (f); 42 U.S.C. § 12117.
[166] *See* Attachment 1.

no argument or evidence that the letter actually was sent to the EEOC prior to that date. Because Plaintiff's charge letter was sent after August 12, 2024, he could not have timely filed it with the EEOC. Accordingly, Plaintiff's unauthorized disclosure claim against Mayor Clement and the City is untimely and will be dismissed with prejudice.[167]

### VIII.  The Court will not allow Plaintiff to amend his complaint.

Plaintiff requests leave to amend his complaint if "the [C]ourt disagrees that Plaintiff has sufficiently set forth any of the foregoing causes of action."[168] "Rule 15(a) requires a trial court to grant leave to amend [the complaint] freely, and the language of this rule evinces a bias in favor of granting leave to amend."[169] In exercising its discretion, the Court may consider such factors as "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of the amendment."[170] An amendment is considered futile when "the amended complaint would fail to state a claim upon which relief could be granted."[171]

Plaintiff has already been granted leave to amend his complaint twice and has failed to cure the identified deficiencies.[172] Further amendment would be prejudicial to the Defendants. Exercising its discretion, the Court finds that further amendment is unwarranted and denies Plaintiff's request for leave to amend his complaint.[173]

---

[167] 42 U.S.C. § 2000e-5(b), (e), (f); 42 U.S.C. § 12117.
[168] R. Doc. 33, at p. 15.
[169] *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014).
[170] *Nolan v. M/V SANTE FE*, 25 F.3d 1043 (5th Cir. 1994) (citing *Gregory v. Mitchell*, 634 F.2d 199, 203 (5th Cir. 1981)).
[171] *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 872-73 (5th Cir. 2000).
[172] R. Doc. 9; R. Doc. 25.
[173] R. Doc. 33, at p. 15.

**IX.    The Court will not exercise supplemental jurisdiction over Plaintiff's state law claims.**

Finally, Defendants argue that, if the Court dismisses all of Plaintiff's federal claims, the Court should refrain from exercising supplemental jurisdiction and remand the case to state court.[174] The Court has dismissed the Plaintiff's federal law claims and declines to exercise supplemental jurisdiction over Plaintiff's state law claims.[175] Because this action was filed in this Court,[176] the case cannot be remanded to state court.

Accordingly;

**<u>CONCLUSION</u>**

**IT IS ORDERED** that the Motion to Dismiss[177] is **GRANTED** as to all of Plaintiff's federal law claims.

**IT IS FURTHER ORDERED** that the Court will not exercise supplemental jurisdiction over Plaintiff's state law claims.[178]

**New Orleans, Louisiana, on this 29th day of July, 2025.**

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[174] R. Doc. 27-1, p. 17.
[175] *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 558 (2005) (Section 1367(a) "is a broad grant of supplemental jurisdiction over other claims within the same case or controversy, as long as the action is one in which the district courts would have original jurisdiction.")).
[176] R. Doc. 1.
[177] R. Doc. 27.
[178] Because the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims, the Court will not address the motion to dismiss Plaintiff's defamation claim. R. Doc. 27-1, at p. 12. Additionally, Defendants filed a motion to stay discovery in this matter on May 22, 2025. *See* R. Doc. 28. Pursuant to this Order, the Court is dismissing all of Plaintiff's federal law claims and declining to exercise supplemental jurisdiction over Plaintiff's state law claims. Accordingly, Defendants' motion to stay discovery is **DENIED AS MOOT**. R. Doc. 28.